UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE ETHYLENE PROPYLENE DIENE MONOMER (EPDM) LITIGATION | Case Nos. 3:03md1542 (SRU) 3:05md1642 (SRU) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**ORDER DENYING DSM DEFENDANTS' MOTION FOR RECONSIDERATION**

Defendants DSM Copolymer, Inc. ("DCI") and DSM Elastomers Europe B.V. ("DEE") (collectively, the "DSM defendants"), move for reconsideration of my December 29, 2009 Ruling on Motions to Strike and for Summary Judgment. In particular, the DSM defendants seek reconsideration of the denial of their motion to strike the European Commission's Statement of Objections ("SO") and the interrogatory answers provided by Crompton Corporation ("Crompton"), a former co-defendant in this case. For the following reasons, the DSM defendants' motion is DENIED.

The standard for granting motions for reconsideration is strict. The three major grounds for granting a motion for reconsideration are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that

might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Motions for reconsideration will not be granted where the party merely seeks to re-litigate an issue that has already been decided.  *Id.*

The DSM defendants urge reconsideration of the denial of their motion to strike the SO because, contrary to the implication I drew from the absence of evidence that they objected to the SO, they did object to the European Commission's factual findings, and those objections undermine the trustworthiness of the SO for the purpose of the hearsay exception found at Federal Rule of Evidence 803(8)(C).  The DSM defendants concede that they did not introduce evidence of their objections to the SO in their summary judgment briefing.  Such evidence was never submitted because the DSM defendants' original position, which I rejected in my ruling, was that the SO was not trustworthy on account of its lack of finality.  *See In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, ___ F. Supp. 2d ___, Nos. 3:03md 1542 (SRU) & 3:05md1642 (SRU), 2009 WL 5218057, at *8-*13 (D. Conn. Dec. 29, 2009).  Now with evidence of their objections in tow, the DSM defendants seek reconsideration of my determination that the SO was sufficiently trustworthy to be admitted under Rule 803(8)(C)'s exception to the hearsay rule.

"A motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *Lopez v. Smiley*, 375 F. Supp. 2d 19, 21-22 (D. Conn. 2005) (quotation omitted).  Furthermore, "the failure to marshal all known facts in opposition to a summary judgment motion does not provide grounds for relief . . . . The movant must present evidence that is truly newly discovered, that is, evidence that could not have been found by due diligence." *Brocuglio v. Proulx*, 478 F. Supp. 2d 297, 300 (D. Conn. 2007),

*aff'd*, 324 F. App'x 32 (2d Cir. 2009).  The DSM defendants' motion for reconsideration is premised on evidence they had in their possession at the time they filed their motion for summary judgment.  Thus, there is no newly discovered evidence warranting reconsideration.

Nor have the DSM defendants demonstrated an intervening change in the law or a clear error in need of correction.  The DSM defendants restate their contention that, because an SO is preparatory and provisional, it is not final and thus not sufficiently trustworthy for admission pursuant to Rule 803(8)(C).  But I see no clear error or manifest injustice in holding that the SO is admissible despite its provisional nature.  As I ruled before, the SO was final to the extent that it represented the conclusions of the European Commission's investigatory body.  It was based on a fact-finding investigation in which the DSM defendants participated and had the opportunity (which they apparently exercised) to defend themselves.  And there existed other factors, such as the SO's timeliness, verifiable methodology, and lack of bias, indicating that the document was trustworthy.  *See In re EPDM*, 2009 WL 5218057, at *10-*13.  Even if I were to consider the DSM defendants' newly offered proof of their objections to the SO's conclusions, my decision would be the same.  The remaining circumstances of the European Commission's investigation and the drafting of the SO are enough to conclude that the document is sufficiently trustworthy to be admitted as evidence.

The DSM defendants argue next that the denial of their motion to strike Crompton's interrogatory answers was incorrect as a matter of a law and should be reconsidered.  They point to no newly discovered evidence or intervening controlling law.  Rather, they contend that reconsideration is necessary to avoid a clear error or manifest injustice.  Their argument is twofold.  First, the DSM defendants maintain that my determination that the Crompton

interrogatory answers were admissible under Federal Rule of Evidence 807, the residual hearsay exception, was mistaken because I failed to analyze the hearsay within the interrogatory answers. *See* Fed. R. Evid. 805.  In other words, my decision was allegedly incomplete because it only addressed one layer of the responses' double hearsay.  The DSM defendants also argue that I was wrong to find the Crompton interrogatory responses trustworthy and that the interests of justice favor their admission.

The DSM defendants previously raised their double-hearsay argument in their summary judgment briefing, and I implicitly addressed it in my prior ruling when I explained that the interrogatory answers were trustworthy because they were inculpatory admissions made while Crompton was a defendant in this action.  *In re EPDM*, 2009 WL 5218057, at *5.  Although the DSM defendants have not met the standard for a motion for reconsideration, I will nonetheless briefly make clear what I left unsaid in my initial ruling.  When a corporate party responds to an interrogatory using a declaration made by an employee or agent within the scope of her authority, that declaration is considered to be an admission by the corporation and is not treated as hearsay by a third party.  *See Mangual v. Prudential Lines, Inc.*, 53 F.R.D. 301, 302 (E.D. Pa. 1971) ("If these answers were held inadmissible on the basis of hearsay, it is conceivable that no corporation could ever be bound by its answers, since all corporate answers must of necessity be based on statements of employees.  Such a ruling would defeat the purpose of interrogatories as addressed to corporations and cannot be tolerated.").[1]  Crompton is no longer a party to the

---

[1] *Duff v. Lobdell-Emery Manufacturing Co.*, 926 F. Supp. 799, 802-03 (N.D. Ind. 1996), is not to the contrary.  There, the court prohibited the corporate defendant from using its own interrogatory answers as evidence to support its summary judgment motion because the interrogatories were introduced by the party that answered them and, thus, were not a judicial admission by a party-opponent.  The interrogatory answers at issue in *Duff* are distinguishable

lawsuit and, therefore, its interrogatory answers cannot be introduced as non-hearsay judicial admissions. But the interrogatory answers are nonetheless admissible under the residual exception to the hearsay rule because the declarations by Crompton's employees are attributable to Crompton itself, which eliminates the hearsay-within-hearsay problem. And, for the reasons set forth in my prior ruling, Crompton's interrogatory answers are trustworthy insofar as they are inculpatory and did not necessarily further the corporation's interests in settlement negotiations. *See In re EPDM*, 2009 WL 5218057, at *5-*6.

That leads to the DSM defendants' final arguments concerning my Rule 807 analysis. The DSM defendants continue to press that the Crompton interrogatories were not trustworthy and admitting them does not further the interests of justice. They mainly repeat the same arguments I previously dismissed, save one: they now assert that the residual exception of Rule 807 is inapplicable on its face because the DSM defendants had no notice of the names and addresses of the Crompton employees who supplied the information in the interrogatory responses. That argument, however, should have been raised in the summary judgment briefing. *See Packer v. SN Servicing Corp.*, 250 F.R.D. 108, 112 (D. Conn. 2008) ("Motions for reconsideration are not designed to allow parties to make arguments that they could have and should have made before the court ruled."). That is especially true in light of the DSM defendants' notice that the plaintiffs intended to use the Crompton interrogatory answers in proving their case. *See In re EPDM*, 2009 WL 5218057, at *4 ("There is no dispute that the DSM defendants are on notice with regard to the plaintiffs' intentions to use the interrogatory

---

from Crompton's responses because they were exculpatory, rather than inculpatory, and functioned as little more than self-serving testimony introduced to eliminate a genuine issue of material fact.

answers as a significant part of their antitrust case against the DSM defendants."). I therefore decline to reconsider my ruling on this ground.

The DSM defendants have pointed to no newly discovered evidence, intervening controlling law, or clear errors in my original ruling with respect to the interrogatory answers' trustworthiness and whether their admission serves the interests of justice. The Crompton interrogatory answers were sufficiently inculpatory and contrary to the corporation's interests to establish their reliability. The fact that the interrogatory answers were based on declarations made by Crompton employees who did not face personal liability for their statements is inconsequential. Those declarations were made in the course of employment – specifically, in aid of Crompton's defense to this litigation – and were trustworthy because they inculpated their employer, Crompton, and Crompton chose to admit them in its interrogatory answer.[2] Although

---

[2] The DSM defendants are incorrect that *Zenith Radio Corp. v. Matsushita Elec. Indust. Co.*, 505 F. Supp. 1190 (E.D. Pa. 1980), *rev'd on other grounds sub nom. Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), held that an employee's statement must be personally inculpatory in order to be admissible against an "unavailable" corporation. *Zenith Radio* ruled that an employee's statement must be personally inculpatory if it is to be introduced under Rule 804(b)(3) as a statement against *the employee's* interest. *Id.* at 1259. For example, the *Zenith Radio* Court held that the contents of an employee's diaries were inadmissible because they were not admissions of the corporation, as the contents concerned matters outside the declarant's scope of employment, and also were not statements against his own interest, for they did not expose the employee to personal liability. *See id.* at 1273-76.

How Rule 804(b)(3) would apply to an "unavailable" corporation – assuming that a corporation can be made "unavailable" by its representatives' refusal or inability to testify – is a question I left unresolved in the summary judgment ruling. *In re EPDM*, 2009 WL 5218057, at *4. Instead, I relied on the residual exception of Rule 807, reasoning that if an employee's declaration would have been admissible against a former corporate defendant as a judicial admission, and the declaration was inculpatory for the corporation, then the declaration is sufficiently trustworthy to be admitted, provided that Rule 807's other requirements are met.

*Zenith Radio* involved a more conventional case not present here: a company that was still a defendant to the suit, but whose employees were unavailable to testify. This case presents a different and arguably more difficult scenario: a corporation that is no longer a party, but which has been rendered essentially "unavailable" because its representatives will not testify. *Zenith Radio* simply does not reach this particular issue and does not compel reconsideration.

the DSM defendants understandably disagree that admitting the Crompton interrogatory answers would serve the interests of justice, they have not put forward any new argument or set of facts that I did not consider when deciding their summary judgment motion.

The DSM defendants' motion for reconsideration (3:03md1542: doc. # 534, 3:05md1642: doc. # 377) is therefore **DENIED**.

It is so ordered.

Dated at Bridgeport, Connecticut, this 15th day of March 2010.

/s/
Stefan R. Underhill
United States District Judge