UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: ETHYLENE PROPYLENE DIENE MONOMER (EPDM) ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No. 3:03 MD 1542 (SRU)<br><br><br><br><br>June 14, 2010 |

**MEMORANDUM IN SUPPORT OF CLASS PLAINTIFFS'
MOTION FOR PRELIMINARYAPPROVAL OF PROPOSED SETTLEMENT
BETWEEN CLASS PLAINTIFFS AND
DSM ELASTOMERS EUROPE B.V. AND DSM COPOLYMER, INC. AND
<u>PROPOSED PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................2

II. BACKGROUND ..................................................................................................3

    A. Background of the Litigation ........................................................................3

    B. The Basic Terms of the Settlement ...............................................................6

        1. The Settlement Amount .........................................................................6

        2. Release and Discharge ...........................................................................6

    C. The Proposed Plan of Allocation ...................................................................6

III. THE PROPOSED SETTLEMENT AND PLAN OF ALLOCATION ARE SUFFICIENTLY FAIR, REASONABLE, AND ADEQUATE TO AUTHORIZE DISSEMINATION OF NOTICE ..................................................................................7

IV. THE FORMS OF NOTICE AND PROOF OF CLAIM FORM SHOULD BE APPROVED ..............................................................................................................11

V. THE PROPOSED NOTICES ADVISE CLASS MEMBERS ABOUT THE REQUESTS FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES ..........................14

VI. PROPOSED TIMING ........................................................................................16

VII. CONCLUSION .................................................................................................17

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Plaintiffs[1] hereby move for an Order granting preliminary approval of the settlement reached between Class Plaintiffs and defendants DSM Elastomers Europe B.V. and DSM Copolymer, Inc. (collectively, "the DSM Defendants") and preliminarily approving the proposed Plan of Allocation. The settlement terms are memorialized in the Settlement Agreement entered into by the parties on May 27, 2010, a copy of which is attached hereto as Exhibit A.

After approximately seven years of hard-fought litigation, including extensive fact and expert discovery, class certification proceedings, summary judgment proceedings and arms-length negotiations among experienced counsel fully aware of the strengths and weaknesses of their respective claims and defenses, Class Plaintiffs have reached a proposed settlement with the DSM Defendants, the only remaining defendants in this action. If approved by the Court, this proposed settlement will bring an end to the ethylene propylene diene monomer ("EPDM") antitrust class action, which already has resulted in substantial Court-approved recoveries in the face of vigorous opposition by many skilled and sophisticated defense counsel, and litigation risks commensurate with the scope of this litigation.[2]

---

[1] The capitalized terms used in this memorandum have the same meanings as those set forth in the Settlement Agreement (attached hereto as Exhibit A).

[2] The Court previously approved settlements with the other defendants named in this action: (a) defendant DuPont Dow Elastomers LLC in the amount of $25,400,000.00 (settlement approved by Order dated June 29, 2005, Docket No. 214); (b) Defendants Polimeri Europa S.p.A. (f/k/a Enichem Americas, Inc.) and Syndial S.p.A. (f/k/a Enichem S.p.A.) in the amount of $3,170,000.00 (settlement approved by Order dated December 13, 2005, Docket No. 246); (c) Defendants Bayer AG, Bayer Corporation and Bayer MaterialScience LLC (f/k/a Bayer Polymers LLC) in the amount of $32,470,000.00 (settlement approved by Order dated November 28, 2006, Docket No. 306); and (d) Defendants Crompton Corporation (n/k/a Chemtura Corporation) and Uniroyal Chemical Company, Inc. (n/k/a Chemtura USA Corporation) in the amount of $21,000,000.00 (settlement approved by Order dated May 9, 2007, Docket No. 378). The Court previously approved these settlements and awarded plaintiffs' counsel fees and expenses attributable to these settlements (*see* Orders dated May 9, 2007, 1997, Docket Nos.

1

A proposed Order granting preliminary approval of the proposed settlement is attached as Exhibit E to the Settlement Agreement, and the proposed Notice, Summary Notice and Proof of Claim form are attached as Exhibit D to the Settlement Agreement.

## I.     INTRODUCTION

Following this Court's ruling on the DSM Defendants' motion for summary judgment on December 29, 2009, the parties engaged in several months of hard-fought, arm's-length negotiations by highly experienced counsel.  The resulting Settlement Agreement provides for the complete resolution of the claims of the EPDM direct purchaser Class against the DSM Defendants in exchange for a one-time payment of Twenty-Five Million Dollars ($25,000,000.00 US).

Accordingly, Class Plaintiffs respectfully request that the Court preliminarily approve the proposed settlement with the DSM Defendants and the proposed Plan of Allocation of the settlement proceeds.  Class Plaintiffs also request that the Court approve the proposed notices to the Class of the settlement and the Proof of Claim form and authorize their distribution to the Class.  Upon the Court's approval, Class Members will be notified of the terms of the settlement and plan of allocation, their right to object, and the date for the final settlement approval hearing.

Specifically, Class Plaintiffs respectfully move the Court for an Order (the "Preliminary Approval Order"), in substantially the form submitted herewith which, *inter alia*:

---

376, 377 & 378).  The proceeds of the settlements have been distributed to class members who submitted valid and timely claim forms in accordance with the previous Orders of the Court.

In addition, the Court granted Class Plaintiffs' motion to voluntarily dismiss Defendant Exxon Mobil Corporation, without prejudice but with a covenant not-to-sue, on August 21, 2008 (that dismissal became effective on or about November 27, 2008, after notification of the Class).  *See* Order dated August 21, 2008, Docket No. 490.

       1.       finds that the proposed settlement with the DSM Defendants and proposed plan of allocation are sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the class; and

       2.       approves the form of mailed Notice of Settlement, the Summary Notice of Settlement, and the Proof of Claim form.

The foregoing provisions of the requested Order will set in motion the procedures necessary to obtain final approval of the proposed settlement as required by Rule 23(e) of the Federal Rules of Civil Procedure.

At this time, in considering whether to grant preliminary approval, the Court need determine only whether the proposed settlement is sufficiently fair, reasonable and adequate to allow notice of the proposed settlement to be disseminated to the Class. A final determination on those points will be made at the final approval hearing, after Class Members have received notice and have been given an opportunity to lodge any objections.

As set forth below, Class Plaintiffs submit that the proposed settlement amply satisfies the required standards, and respectfully request that the Court authorize dissemination of notice pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

## II.   BACKGROUND

### A.   Background of the Litigation

This Court is, of course, fully aware of the nature and scope of the claims asserted in this litigation, the procedural posture of the case, and the vigorous advocacy that has characterized the litigation since its inception. Beginning in March 2003, class action complaints alleging violations of the federal antitrust laws by manufacturers of EPDM were filed in multiple federal District Courts. A motion was made to the Judicial Panel on Multidistrict Litigation ("JPML")

to centralize the cases in a single court to promote the just and efficient conduct of the litigation. On August 11, 2003, the JPML entered a Transfer Order centralizing the cases in the United States District Court for the District of Connecticut and recommending that they be assigned to this Court for coordinated or consolidated pretrial proceedings.  By Order dated September 11, 2003, the Court appointed Class Plaintiffs' Co-Lead Counsel and Class Plaintiffs' Liaison Counsel.

The operative complaint in this Action—the Second Consolidated Amended Complaint ("Complaint")—was filed on July 1, 2004.[3]  The Complaint alleges that the Defendants, including the DSM Defendants, violated the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, by engaging in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices for EPDM sold in the United States.  As a result of this conduct, the Complaint alleges that members of the Class paid artificially inflated prices for EPDM and, therefore, have suffered injury.

On February 13, 2009, the Court certified the following litigation class:

> All individuals or entities (excluding governmental entities, Defendants and their parents, predecessors, subsidiaries, affiliates, and co-conspirators) who purchased ethylene propylene diene monomer ("EPDM") in the United States directly from one or more of the Defendants or any predecessor, subsidiary, or affiliate of any Defendant at any time during the period from January 1, 1997 to December 31, 2001 (the "Class Period").

On May 27, 2009, the Court of Appeals for the Second Circuit denied the DSM

---

[3]  A separate, individual complaint was filed by RBX Industries, Inc. ("RBX") on July 29, 2004 in the United States District Court for the Eastern District of Pennsylvania and transferred to this Court by the JPML on October 8, 2004.  *See RBX Industries, Inc. v. Bayer Corporation, et al.*, Case No. 04-cv-3605 (E.D. Pa.) / Case No. 05-cv-528.  RBX, however, elected to remain in the Class in response to the Notice disseminated pursuant to the Court's Order of May 27, 2009 (Docket No. 527).  Having remained a member of the Class, RBX is a Class Member and its claims are being settled and released as part of the proposed settlement.  As detailed in the Settlement Agreement, like the Second Consolidated Amended Complaint, RBX's complaint against the DSM Defendants will be dismissed, with prejudice, in the event the Court finally

4

Defendants' Rule 23(f) petition for interlocutory review of this Court's class certification order.

Following extensive briefing by the parties and oral argument, on December 29, 2009, this Court denied the DSM Defendants' motion for summary judgment and their motion to strike certain evidence (the "December 29 Order"). S*ee* Docket Nos. 437, 438, 439, 440, 450, 456, 473, 474, 530.  The Court denied the DSM Defendants' motion for reconsideration of that order on March 15, 2010.  *See* Docket Nos. 535, 541, and 547.  Shortly thereafter, the Court set a trial date of November 1, 2010.   *See* Docket No. 539.

Following the issuance of the Court's December 29 Order, the parties engaged in extensive negotiations lasting several months, during which time the merits of the parties' positions were thoroughly discussed and evaluated.  At the time settlement negotiations began, Class Plaintiffs already had secured substantial settlements with four defendant groups, class and merits discovery had closed, and this Court had certified a Class and ruled upon the DSM Defendants' motion for summary judgment.  In addition, prior to entering into the proposed settlement with the DSM Defendants, Plaintiffs' Counsel reviewed over 2 million pages of documents, analyzed extensive electronic transactional and other financial data and information, conducted numerous fact and expert depositions, and engaged in extensive written discovery and various motions and court appearances.

---

approves the proposed settlement and enters judgment.

5

### B. The Basic Terms Of The Settlement Agreement

#### 1. The Settlement Amount

The proposed Settlement Agreement with the DSM Defendants provides that they will have paid a total of $25 million (US) in cash (the "Settlement Amount") on or before November 1, 2010.[4]

#### 2. Release and Discharge

The Settlement Agreement provides that, upon occurrence of the Effective Date and in consideration of payments of the Settlement Amount and for other valuable consideration, the Released Parties shall be completely released, acquitted, and forever discharged from any and all Released Claims as set forth in the Settlement Agreement. The release and discharge provisions are set forth in Paragraphs 14 and 15 of the Settlement Agreement.

### C. The Proposed Plan of Allocation

The Class Plaintiffs propose an identical allocation plan to that which has already been approved by the Court with respect to the other settlements in this Action. *See*, *e.g.*, Order Granting Final Approval of Plan of Allocation of [Bayer] Settlement Proceeds, Docket No. 307 (Nov. 28, 2006); Memorandum in Support of Motion for Final Approval of Proposed Settlement by Class With Defendants Bayer AG, Bayer Corporation and Bayer Material Science LLC, at 11, Docket No. 299 (Nov. 14, 2006) (describing plan of allocation); Order Granting Final Approval of Plan of Allocation of Crompton Settlement Proceeds, Docket No. 376 (May 10, 2007); Memorandum in Support of Motion for Final Approval of Proposed Settlement With Defendants Chemtura Corporation (formerly Crompton Corporation) and Chemtura USA Corporation

---

[4] A portion of the Settlement Amount--$40,000.00 US—already has been deposited in an account designated by Class Plaintiffs' Co-Lead Counsel for purposes of disseminating notice of the settlement to the Class (in the event of preliminary approval by the Court).

(formerly Uniroyal Chemical Company, Inc.), at 13, Docket No. 372 (April 27, 2007) (describing plan of allocation).

Pursuant to the proposed Plan of Allocation, a claim will be calculated as follows: distribution of the net Settlement Fund will be made on a *pro rata* basis among valid claimants based on the U.S. dollar amount each claimant paid to the DSM Defendants and the other Defendants for its direct purchases of EPDM during the period of January 1, 1997 through December 31, 2001. The Plan of Allocation is designed to ensure that the settlement proceeds are fairly and equitably distributed among claimants. As such, the Plan of Allocation fairly allocates the settlement with the DSM Defendants among Class Members.

### III. THE PROPOSED SETTLEMENT AND PLAN OF ALLOCATION ARE SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE TO AUTHORIZE DISSEMINATION OF NOTICE

Court approval is required to settle a class action lawsuit. Fed. R. Civ. P. 23(e). Obtaining such approval is a two-step process:

> First, counsel submit the proposed terms of the settlement and the court makes a preliminary fairness evaluation . . . . If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt fairness or other obvious deficiencies . . . and **appears to fall within the range of possible approval**, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation*, Third (1997) ("*Manual*") § 30.41 (emphasis added); *See also* 4 *Newberg on Class Actions* § 11:25, at 38-39 (4th ed. 2000) ("*Newberg*"); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983).

"The law favors Settlement, of class actions no less than of other cases." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992) (citing *Weinberger v.*

7

*Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)).  In reviewing the fairness of a proposed class action settlement:

> It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement . . .  Such procedure would emasculate the very purpose for which Settlements are made.  The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citing *Neuwirth v. Allen*, 338 F.2d 2 (2d Cir. 1964).  The Court of Appeals for the Second Circuit has identified nine factors that courts should consider in assessing the fairness of a proposed settlement at the final approval hearing.  These factors are: (a) the complexity, expense and likely duration of the litigation; (b) the reaction of the class to the Settlement; (c) the stage of the proceeding and the amount of discovery completed; (d) the risks of establishing liability; (e) the risks of establishing damages; (f) the risks of maintaining the class action through trial; (g) the ability of the defendants to withstand a greater judgment; (h) the range of reasonableness of the Settlement in view of the best possible recovery; and (i) the range of reasonableness of the Settlement to a possible recovery in view of all the attendant risks of litigation.  *See Grinnell*, 495 F.2d at 463.  At the final approval hearing, Class Plaintiffs will demonstrate that the proposed settlement with the DSM Defendants easily satisfies each of these factors.

    The proposed settlement with the DSM Defendants is well within the "range of possible approval" as it provides a recovery of more than 9% of DSM's sales of EPDM in the United States during the damage period. [5]  In addition, from Class Plaintiffs' perspective (and as

---

[5]  This settlement percentage compares favorably to the settlements previously approved by the Court. The settlement with DDE in the amount of $25,400,000 represented approximately 4.0%

8

estimated by Class Plaintiffs' expert), the settlement represents the DSM Defendants' full share of damages attributable to its sales, and a substantial percentage of class-wide aggregate damages (after reductions for prior settlements).  From the DSM Defendants' perspective (and as stated by their expert), although the Class has suffered no damage as a result of any action of the DSM Defendants (indeed, the DSM Defendants have emphatically denied any wrongdoing, and, as stated in the Settlement Agreement, have entered into the settlement solely to avoid the expenses, risks, and burdens of further litigation), the proposed settlement is nonetheless within the range of possible approval as it compares favorably to the other settlements in this case and to settlements approved in other antitrust cases.  *See, e.g.*, *In re Automotive Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007) (approving settlement where class recovery represented 1.5% of relevant sales); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (recovery equal to 1.62% of relevant sales); *In re Shopping Carts Antitrust Litig.*, 1983 WL 1950, at *9 (S.D.N.Y. Nov. 18, 1983) (recovery equal to 3% of relevant sales).

---

of the amount of DDE's EPDM sales to class members during the class period. The settlement with defendants Syndial S.p.A., Polimeri Europa S.p.A., and Polimeri Europa America, Inc. (collectively, "Syndial") in the amount of $3,170,000, represented approximately 4.75% of the amount of Syndial's EPDM sales to class members during the class period. The settlement with the Bayer defendants in the amount of $32,470,000, after the reversion of approximately $7,730,000 back to Bayer to account for opt-outs from that settlement, represented approximately 9% of Bayer's EPDM sales to class members during the class period, and the settlement with Crompton Corporation and related entities in the amount of $21,000,000, represented approximately 6.3% of Crompton's EPDM sales to class members during the Class Period.

9

Class Plaintiffs' Co-Lead Counsel, who have substantial experience litigating antitrust class actions, believe the settlement is an excellent resolution of the claims of the Class against the DSM Defendants. The Settlement Agreement was entered into after the completion of all discovery, including the exchange of expert reports. The opinion of Class Plaintiffs' Co-Lead Counsel, which is based on a thorough analysis of the facts of this case, should carry significant weight. *See e.g., Stewart v. Rubin,* 948 F. Supp. 1077, 1099 (D.D.C. 1996) *aff'd* 124 F.3d 1309 (D.C. Cir. 1997) ("A court should defer to the judgment of experienced counsel who have competently evaluated the strength of the proof."); *McGuiness v. Parnes,* 1989 WL 29814, at *1 (D.D.C. Mar. 22, 1989) ("While the evaluation of the fairness and adequacy of a settlement such as this is anything but a scientific process, there is nothing about this Settlement suggesting that the Court should second-guess the product of the negotiations between the skilled and conscientious lawyers who represented parties on both sides of this litigation."); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.").

Preliminary approval of the Plan of Allocation of the settlement proceeds is also appropriate. Under the Plan of Allocation, Class Members who submit valid, timely Proof of Claim forms will each receive a *pro rata* share of the Settlement Fund. Their *pro rata* shares will be based on the U.S. dollar amount paid to any Defendant for direct purchases of EPDM in the United States during the Class Period. The Proof of Claim forms will be subject to audit and/or other test procedures by the Claims Administrator, Gilardi & Co., LLC. This Plan of Allocation is the same as those approved by the Court in the prior settlements with DDE, Polimeri/Syndial, Bayer, and Crompton, and is consistent with those approved in other antitrust

10

class actions.  *See, e.g., In re Sorbates Direct Purchaser Antitrust Litig.*, 2002 WL 31655191, at *2 (N.D. Cal. 2002) (approving plan of allocation where "each class claimant is to receive a pro rata share of the net settlement funds, depending upon the dollar amount of verified purchases").

### IV. THE FORMS OF NOTICE AND PROOF OF CLAIM FORM SHOULD BE APPROVED

The proposed notice program and forms of notice satisfy the requirements of Rule 23(e)(1).  Under Rule 23(e)(1), "[the] court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Here, the proposed mailed notice identifies the following in plain, easily understood language:

- the nature of the action;

- the definition of the class certified;

- a summary of prior settlements;

- a description of the settlement, including a full recital of the release terms;

- Class Plaintiffs' Co-Lead Counsel's and Class Plaintiffs' Liaison Counsel's intention to request for attorneys' fees and costs, and incentive awards for the Class Plaintiffs and the amounts of those requests;

- the plan for allocation of the Settlement Fund;

- how to file a Proof of Claim form and the deadline for doing so;

- how to object to the settlement, the request for attorneys' fees and costs and the request for incentive awards, as well as the deadline for doing so;

- the binding effect of the final judgment on Class Members; and,

- the final approval hearing date and location.

Class Plaintiffs propose that the Notice and Proof of Claim be sent by First-Class mail to all persons and entities identified by Defendants as direct purchasers of EPDM in the United States during the Class Period.  Copies of the Notice and Proof of Claim form will also be posted on the Claims Administrator's web site.  Additionally, a Summary Notice, which explains how to obtain a copy of the Notice and Proof of Claim, will be published once in the national editions of *The Wall Street Journal* and the *International Herald Tribune*.  The Summary Notice will be published shortly after the Court grants preliminary approval of the settlement and after the Notice and Proof of Claim forms are mailed.

This type of notice program is frequently used in class action cases and it was approved by the Court for use in disbursing the Crompton Settlement fund in 2007 and in notifying the Class of the Court's certification decision in 2009. See Order dated May 27, 2009 (Docket No. 527).  It also complies with the requirements of Rule 23.  *See, e.g.*, 5 *Moore's Federal Practice* (3d Ed. 2003) at §23.63[8][a] ("Notice of the class action is normally sent to the identified individual class member by first-class mail."); *see also id.* at §23.63[8][b] ("Publication of notice is often the best notice practicable for class members who cannot be identified or located specifically through reasonable efforts."); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974) (due process is satisfied by mailed notice to all class members who reasonably can be identified).

The terms of the settlement are fair (indeed, excellent), and the class of plaintiffs covered by the settlement is congruent with the Class certified by the Court, notice of which was mailed to the Class and published in 2009.  Class Members had an opportunity to opt-out of the class at that time.[6]  Therefore, notice to the Class of the proposed settlement with the DSM Defendants

---

[6]   The Parker Hannifin and PolyOne Corporation entities (along with certain identified

12

does not provide for a second opt-out opportunity. *See* Fed. R. Civ. P. 23(e)(4) (formerly Rule 23(e)(3)). "Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006). Indeed, as the district court in *Denney* noted, this rule "was intended to be applied sparingly." *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 345 (S.D.N.Y. 2005), *aff'd* 443 F.3d 253 (2d Cir. 2006).

Courts in the Second Circuit have repeatedly approved settlements without providing class members a second opportunity to opt out. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d 96, 114 (2d Cir. 2005) ("Since the parties had been given notice of the action, the opportunity to opt out, notice of the proposed settlement, and the opportunity to object, the court . . . was not required to grant those who objected to the proposed settlement a second opportunity to opt out.") (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992)); *In re WorldCom, Inc. Secs. Litig.*, 388 F.Supp.2d 319, 342 (S.D.N.Y. 2005) ("[T]he Second Circuit has explicitly rejected the contention that Class Members must be given a second opportunity to opt out after the terms of a settlement are announced. Given the notices distributed to the Class, and the opportunities granted to the Class to opt out and later to object to the 2005 Settlements, there is no reason here to permit a second opportunity to opt out.") (citing *Wal-Mart*, 396 F.3d at 114). Similarly, this Court should approve the DSM settlement without providing class members a second opportunity to opt out.

---

subsidiaries and affiliates), which filed a direct action lawsuit against the Defendants in this case (*see Parker Hannifin Corp. and PolyOne Corp. v. Bayer AG, et al.*, Case No. 1:04cv2273 (N.D. Ohio)/Case No. 3:05cv604 (D. Conn.), currently consolidated as part of *In re Polychloroprene Antitrust Litig.*, MDL 1642 (D. Conn.)), were the only entities to validly opt-out of the class. *See* Exhibit B to the Settlement Agreement.

The content of the Notice and the proposed plan for disseminating the Notice fulfills the requirements of Rule 23 and due process. Accordingly, approval of the notice program is appropriate.

The Proof of Claim form should also be approved. It is materially the same form that the Court has previously approved in connection with previous settlements in this litigation. Moreover, it will now be even easier for most Class Members to complete. As detailed in the Notice and the Proof of Claim form, Class Members may choose to rely on their qualifying EPDM purchases as set forth in their claim forms submitted in connection with the distribution of the Crompton Settlement (and as approved by the Claims Administrator), by simply checking a box on the Proof of Claim form rather than having to re-record all of their qualifying EPDM purchases.

## V.   THE PROPOSED NOTICES ADVISE CLASS MEMBERS ABOUT THE REQUESTS FOR ATTORNEYS' FEES, LITIGATION COSTS AND INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES.

The Notice will advise Class Members that Class Plaintiffs' Co-Lead Counsel and Class Plaintiffs' Liaison Counsel will request attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund, and reimbursement of litigation expenses in the amount of approximately $900,000.00 (US), for their extensive efforts since the time of the Court's earlier fee and expense award (*see* Order Granting Motion for Interim Award of Attorneys' Fees and Reimbursement of Expenses dated May 9, 2007, Docket No. 377). These efforts include litigating this case against the DSM Defendants for over seven years, through the close of fact and expert discovery; extensive briefing on class certification issues, both in this Court and in the United States Court of Appeals for the Second Circuit; extensive briefing and argument on the DSM Defendants'

motion for summary judgment; and trial preparation continuing up to the time of the settlement.[7] Class Members will have the opportunity to file objections, if any, to the requests for attorneys' fees and litigation expenses.

The Notice also advises the Class that a request will be made to the Court to award each of the nine named class representatives incentive awards of $25,000.00 (US) to compensate them for their time and effort that led to all of the settlements in this case, and the risks of litigating against a supplier of raw materials important to Class Plaintiffs' business operations.[8] As the Court is aware, it is authorized to make incentive awards as it determines to be appropriate under the circumstances. *See, e.g. In re Publication Paper Antitrust Litig.*, MDL No. 1631, 2009 WL 2351724 (July 30, 2009) (Underhill, J.) (approving incentive award of $20,000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 430 (2d Cir. 2007) (noting without comment that district court had approved incentive awards of $25,000 to two named plaintiffs who had been deposed); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *7 (E.D. Pa. Jan. 3, 2008) (approving incentive awards of $30,000 for each of the four class representatives). Class Members are also advised of their rights to object to the request for incentive awards.

---

[7] Class Plaintiffs' Co-Lead Counsel and Class Plaintiffs' Liaison Counsel will describe these efforts in detail in the various filings they will submit before the final approval hearing. *See* Proposed Preliminary Approval Order at paragraph 13.

[8] Functional Products, Inc. assigned its antitrust claim to plaintiff Richard Immerman, a previous owner of the company.

15

At the final approval hearing, the Court will determine whether to make all such awards. At this juncture, Class Plaintiffs merely seek to include the requests in the Notice.

## VI. PROPOSED TIMING

The Plaintiffs propose the following timetable for providing notice to potential Class Members, the final approval hearing, and events that must occur prior to the final approval hearing. If the Court preliminarily approves the instant settlement, the forms of notice of same, and the Proof of Claim form, the exact dates for the following events will be set forth in the Preliminary Approval Order, a form of which will be presented to the Court for execution.

| **DATE** | **EVENT** |
| --- | --- |
| 15 days after Preliminary Approval | Mail Notice and Proof of Claim form to Class Members |
| approximately 25 days after preliminary approval | Publish Summary Notice in *The Wall Street Journal* and *The International Herald Tribune*. |
| 45 days after preliminary approval | Deadline to file motion for award of attorneys' fees and litigation costs, and request for incentive awards. |
| 75 days after preliminary approval | Deadline for Class Members to serve objections to the settlement, plan of allocation, request for attorneys' fees and costs and/or request for incentive awards. |
| 90 days after preliminary approval | Deadline to file papers in support of final approval of settlement and plan of allocation |
| 90 days after preliminary approval | Last day for Class Members to file Proof of Claim forms. |
| At the Court's convenience | Hearing regarding final approval of settlement and plan of allocation, request for attorneys' fees and costs and request for incentive awards. |

16

**VII.    CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court grant preliminary approval of the proposed settlement with DSM Elastomers Europe B.V. and DSM Copolymer, Inc.

Dated:  June 14, 2010						Respectfully submitted,

								*s/David R. Schaefer*_____
								David R. Schaefer (Bar No. 04334)
								**BRENNER, SALTZMAN &
								WALLMAN, LLP**
								271 Whitney Avenue
								New Haven, CT 06511
								Telephone: (203) 772-2600
								Facsimile: (203) 562-2098
								Email: dschaefer@bswlaw.com

								**Class Plaintiffs' Liaison Counsel**

**Class Plaintiffs' Co-Lead Counsel**

| | |
|---|---|
| **BOLOGNESE & ASSOCIATES, LLC**<br>Anthony J. Bolognese<br>Joshua H. Grabar<br>1500 JFK Blvd., Suite 320<br>Philadelphia, PA<br>Tel: (215) 814-6750/Fax: (215) 814-6764<br>abolognese@bolognese-law.com<br>jgrabar@bolognese-law.com | **GOLD BENNETT CERA & SIDENER, LLP**<br>Solomon B. Cera<br>C. Andrew Dirksen<br>595 Market St., Suite 2300<br>San Francisco, CA 94105<br>Tel: (415) 777-2230/Fax: (415) 777-5189<br>sbc@gbcslaw.com<br>cad@gbcslaw.com |
| **HAUSFELD, LLP**<br>Michael D. Hausfeld<br>Megan E. Jones<br>Brent W. Landau<br>1700 K Street, NW<br>Suite 650<br>Washington, DC 20006<br>Tel: (202) 540-7200/Fax: (202) 540-7201<br>mhausfeld@hausfeldllp.com<br>mjones@hausfeldllp.com | **LEVIN FISHBEIN SEDRAN & BERMAN**<br>Howard J. Sedran<br>Charles C. Sweedler<br>510 Walnut St., Suite 500<br>Philadelphia, PA 19106<br>Tel: (215) 592-1500/Fax: (215) 592-4663<br>hsedran@lfsblaw.com<br>csweedler@lfsblaw.com |

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 14, 2010, a copy of foregoing Memorandum in Support of Motion for Preliminary Approval of Proposed Settlement with DSM Elastomers Europe B.V. and DSM Copolymer, Inc. and Proposed Plan of Allocation of Settlement Proceeds was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.

                                                *s/David R. Schaefer*
                                                David R. Schaefer (ct04334)

m:\docs\04892\001\ax4538.doc